## GODKIN v. MONAHAN.

### (Circuit Court of Appeals, Seventh Circuit. November 8, 1897.)

#### No. 448.

1. PAROL EVIDENCE TO VARY WRITING.
   Whenever a written contract purports on its face to be a memorial of the transaction to which it relates, it supersedes all prior negotiations and agreements, and oral testimony will not be admitted of prior or contemporaneous promises on a subject so clearly connected with the principal transaction as to be a part and parcel of it, without the adjustment of which the parties cannot be considered as having finished their negotiations and finally concluded a contract.

2. SAME.
   Where the language of an instrument has a settled legal construction, parol evidence is not permissible to contradict that construction.

3. CONTRACTS—CONSTRUCTION.
   An engagement to perform an act involves an undertaking to secure the means necessary to the accomplishment of the object.

4. PAROL EVIDENCE—LOGGING CONTRACT.
   An agreement to fell timber, and to skid, haul, deliver, and bank it at a certain river, necessarily involves an agreement by the same party to obtain a place on which to bank it; and parol evidence is not admissible to show a prior agreement that the opposite party was to obtain a place for banking.

5. LOGGING CONTRACTS—CONSTRUCTION.
   Under a contract to deliver and bank logs by a specified date, "provided the logging season permit," the measure of the contractor's duty is not that of ordinary care and diligence, but his obligation is absolute, except as affected by the nature of the season.

6. SAME—ACCEPTANCE OF DELIVERY—QUESTION FOR JURY.
   Where there is a breach of a contract to haul and deliver logs by a specified date at a specified place, but the contractor delivers them at a

later date and at another place, where the other party accepts them, and takes from the contractor the cost of running them to the agreed place of delivery, it is proper to submit to the jury the question whether this constitutes a recognition of the contract as in force, and an acceptance of delivery.

## In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

This action was brought by John F. Monahan, the defendant in error, to recover of John Godkin, the plaintiff in error, the contract price for cutting and hauling certain logs under a written contract dated October 11, 1892. By this contract, Monahan agreed to cut and deliver in the Wisconsin river all the Norway and white pine timber suitable for saw logs standing and lying on the N. ½ of section 31 in township 42 N., range 11 E.; to cut and skid all down and lying timber before felling the standing timber; to cut all of such timber on or before January 1, 1893; and to have all logs banked on the Twin river in township 41, range 10 E., on or before the 20th day of March, 1893, provided the logging season permitted. Plaintiff in error agreed to pay for that service a certain proportion when 1,000,000 feet were skidded, a certain other proportion when the full amount was skidded, a certain further proportion when 1,000,000 feet were banked on the Twin river, a certain further proportion when the full amount was so banked, and the balance when the whole amount was run in the Wisconsin river. The answer charged that Monahan negligently failed to commence work under the contract until late in the season, or to employ sufficient force of men and teams to perform the work within the prescribed time; that the logs were not cut or skidded until January 17, 1893, and were not hauled until late in the season, and long after there was sufficient snow and cold weather to make the roads; that he delayed the commencement of the work of hauling for several weeks after he might have so done; that by reasonable diligence all of the logs could have been hauled and banked prior to March 20, 1893, the date named in the contract; that the season was in every way suitable and favorable for logging operations; and that, by reason of such failure in duty, about one-third of the cut was not skidded on the lands or hauled or banked until the next ensuing logging season, but was left in the woods, and, in consequence, became worm-eaten, sap-stained, and damaged, and depreciated in value.

At the trial it was disclosed that the contract was not performed according to its terms; that Monahan did not complete the felling of the timber until January 6, 1893; that he began operations on the land under the contract immediately after election day, in November, 1893, and some two or three weeks thereafter instituted inquiries touching a banking place on the Twin river, and found that all the available land for that purpose had been secured by others. He thereupon sent a messenger to Godkin, who resided in the state of Michigan, notifying him of failure to procure a banking place for the logs on Twin river, and received by mail a letter from Godkin to the following effect:

"November 27th, 1892. Mr. Alexander Roberts has just returned, and informed me that you say you cannot get banking ground on Twin river, in town 41, 10 E., which seems absurd, as you said you would not take the contract if you did not get the banking ground on Twin river, and that you would see about it at once. Now, I have no objection to your putting them in the Wisconsin river below [above?] where the Twin river empties in, as cheap as you can, but I do object to your doing anything that will interfere with the logs being delivered in the boom as early as if put in as the contract calls for."

Godkin visited the camp about the 9th day of December, and told Monahan he must get a landing wherever he could. Between that time and the 1st of January, Monahan hunted a landing place daily, and finally obtained one on the Wisconsin river, nine miles above the mouth of the Twin river. A road was already in existence from these lands to, or nearly to, the Twin river, at a point 2½ miles from its mouth; but, in order to get to the Wisconsin river, Monahan was obliged to construct a road a mile and a half or two miles in

length, and to bridge a creek, and occupied 14 days in so doing. The haul by this road was a half mile longer than that to the Twin river, and more difficult. Such of the logs as were banked on the Wisconsin river in the season of 1893 were so hauled and banked between January 16th and April 3d. 511,828 feet of logs were left over in the woods, and were not hauled and banked at the landing place until the next season.

There was contention at the trial with respect to the character of the season and the damage to logs which remained unhauled. These logs were hauled the next season by Monahan, and were run down the Wisconsin river by Godkin, Monahan paying the cost of running them to the mouth of the Twin river, but these logs were hauled by Monahan without the previous consent of Godkin. At the trial, under the objection and subject to the exception of Godkin, parol evidence was admitted to prove that prior to the contract it was verbally agreed between the parties that Godkin should procure banking privilege on the Twin river. The plaintiff in error requested the court to charge in effect (1) that Monahan, if he had failed to exercise reasonable diligence to haul the logs during the season of 1892–93, could not recover any sum whatever for hauling the 511,000 feet of logs left over that season, and hauled the next season; (2) that the jury should disregard all parol testimony in respect to any agreement on the part of Godkin made prior to the execution of the written contract to furnish a banking ground; (3) that, by the terms of the written contract, Monahan was required to furnish such banking ground. These instructions were refused, and exceptions to such refusals duly preserved. The court submitted to the jury to find which party agreed to furnish the banking ground, and charged: (1) That if Godkin had so agreed, and had failed to provide it, Monahan was excused for any time reasonably occupied by him in looking up the banking ground, and in cutting his road to it, and was also entitled to credit for additional time or difficulties encountered in the way of running the road from the logging place to the bank,—to which charge an exception was reserved. (2) That, if Monahan agreed to furnish the banking ground, it was his duty to proceed at once to ascertain if he could have the banking ground on the Twin river, and, if that could not be obtained, he should proceed at once to find an available place, and make every effort in his power to make roads to that new place, and make all the provisions necessary to be made in view of the new location of the banking place, and, if he therein failed, he was negligent, and would be chargeable with the delay, if any, thereby occasioned. But also charged: (3) "And aside from that, gentlemen, I am satisfied that the change is not material to your consideration, and the simple fact that the logs were banked on the Wisconsin river instead of the Twin river, Godkin consenting thereto upon the condition that it should make no more delay, would not of itself be breach of the contract, which would defeat a recovery by the plaintiff, although it would be, as I have explained to you, taken into consideration for the purpose of determining whether or not plaintiff had exercised the diligence which he should exercise in the performance of the contract as so amended." To this part of the charge exception was duly reserved. (4) "The plaintiff assumed to exercise under the terms of the contract, and was required to use, such reasonable and proper diligence as a man of ordinary character and prudence would use in his own affairs. He would, in starting out on the work, be required and expected to make such provision as to the number of teams and the number of men and diligence of pushing the work as would ordinarily be required in ordinary seasons in that regard." To this instruction the proper objection and exception were reserved. A verdict was returned for the plaintiff below, and a writ of error is sued out to review the judgment entered on such verdict.

James G. Flanders and John Barnes, for plaintiff in error.

Charles W. Felker and George Hilton, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts). We have on several occasions spoken to the rule that excludes parol evidence of verbal negotiations to contradict or vary the terms of a subsequent

written contract. In Union Stock-Yards & Transit Co. v. Western Land & Cattle Co., 18 U. S. App. 438–453, 7 C. C. A. 660, and 59 Fed. 49, we declared the principle that the written agreement speaks, conclusively, the conclusion to which the parties to it have arrived, and all prior negotiations are merged in it, and that, where the language of an instrument has a settled legal construction, parol evidence is not admissible to contradict that construction. That ruling was approved and reasserted in Gorrell v. Insurance Co., 24 U. S. App. 188, 11 C. C. A. 240, and 63 Fed. 371; Union Nat. Bank of Oshkosh v. German Ins. Co. of Freeport, 34 U. S. App. 397, 18 C. C. A. 203, and 71 Fed. 473; Lumber Co. v. Comstock, 34 U. S. App. 414, 18 C. C. A. 207, and 71 Fed. 477. In the Comstock Case, following and approving the decisions in Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961, and Naumberg v. Young, 44 N. J. Law, 331, we further held that, "whenever the contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and * * * oral testimony will not be admitted of prior or contemporaneous promises on a subject so clearly connected with the principal transaction with respect to which the parties are contending as to be part and parcel of the transaction itself, without the adjustment of which the parties cannot be considered as having finished their negotiations and finally concluded a contract." We recognize the rule that parol evidence may be received of the existence of an independent oral agreement not inconsistent with the stipulations of the written contract in respect to which the writing does not speak, but not to vary, qualify, or contradict, add to, or subtract from, the absolute terms of the written contract. The collateral agreement which may be proven by parol evidence must relate to a subject distinct from that to which the written contract applies. We believe these principles to be fully in accord with the rulings of the ultimate tribunal. Specht v. Howard, 16 Wall. 564; Forsyth v. Kimball, 91 U. S. 291; Brown v. Spofford, 95 U. S. 474; Insurance Co. v. Mowry, 96 U. S. 544; Thompson v. Insurance Co., 104 U. S. 252, 259; Bast v. Bank, 101 U. S. 93, 96; Martin v. Cole, 104 U. S. 30, 38; Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213; Burnes v. Scott, 117 U. S. 582, 585, 6 Sup. Ct. 865; Falk v. Moebs, 127 U. S. 597, 8 Sup. Ct. 1319; De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536; Seitz v. Machine Co., 141 U. S. 510, 12 Sup. Ct. 46; Van Winkle v. Crowell, 146 U. S. 42, 13 Sup. Ct. 18; McAleer v. U. S., 150 U. S. 424, 14 Sup. Ct. 160; Harrison v. Fortlage, 161 U. S. 57, 63, 16 Sup. Ct. 488. These principles are also supported by the law of the state where this contract was made. Hei v. Heller, 53 Wis. 415, 418, 10 N. W. 620; Oliver v. Heil (Wis.) 70 N. W. 346.

We have not failed to consider the case of The Poconoket, 28 U. S. App. 600, 17 C. C. A. 309, and 70 Fed. 640, which was strongly urged to our attention. There the written agreement provided for the construction of a passenger steamer, payment therefor to be made at stated periods during the progress of the construction. A portion of such payment maturing before the completion of the vessel could be made in bonds of the company contracting for the building of the

vessel, to be secured by mortgage upon certain described premises, and also by mortgage upon a certain steamer then owned by that company, and upon the steamer to be constructed under the agreement. The court held that the contract did not embody the entire agreement, and that it was admissible to show an oral agreement to the effect that the title should vest in the company before delivery of possession. Without stopping to inquire whether the decision could not have been sustained upon the ground that the written agreement, in virtue of the clause providing for a mortgage of the vessel during the process of its construction, contemplated title in the purchaser, it is sufficient to say that the court bottomed its decision upon the assumption that the contract was silent upon the subject of title, and that by the law of this country (counter to that of England) the title was in the builders, and then held that the parol agreement with respect to the title was collateral and independent, and could be given in evidence. The lower court admitted the evidence upon the rulings of the supreme court of Pennsylvania, which court has gone to an extreme in the admission of evidence to vary written agreements. The court of appeals affirmed the decree upon the strength of those decisions, and of certain other cases cited, notably certain English cases, which are reviewed and disapproved in Naumberg v. Young, supra. The law of a contract at the time it is made inheres in and becomes a term of the contract, and, it is settled, cannot be changed by subsequent legislation. Still less, as it seems to us, can the law of the contract be changed by parol negotiations incident to the writing. Such a verbal agreement does not relate to a collateral subject, to one distinct from that to which the contract applies, but to that which inheres in, and, under the law, is a term of, the contract, and part and parcel of it. This decision seems to us to be directly opposed to the decision of the supreme court in Van Winkle v. Crowell, supra. With deference, we cannot permit the decision in The Poconoket to control our judgment, or avail with us to undermine or weaken a principle and a rule of evidence which we deem absolutely essential to the protection of rights of property.

It is also well settled with respect to the interpretation of contracts that an engagement to perform an act involves an undertaking to secure the means necessary to the accomplishment of the object, and that whatever is necessary to the performance of the undertaking is part and parcel of the contract, and, although not specified in the contract, is to be implied, and is in judgment of law contained in it.   U. S. v. Babbitt, 1 Black, 61; Lawler v. Murphy, 58 Conn. 309, 20 Atl. 457; Currier v. Railroad, 34 N. H. 498; Savage v. Whitaker, 15 Me. 24; Rogers v. Kneeland, 13 Wend. 114; Johnston v. King, 83 Wis. 8, 53 N. W. 28; Manistee Iron Works Co. v. Shores Lumber Co., 92 Wis. 21, 65 N. W. 863.

The agreement here was to cut and deliver in the Wisconsin river certain logs; that these logs should be banked on the Twin river, which empties into the Wisconsin river, on or before the 20th day of March, 1893. The engagement of Monahan, therefore, was to deliver these logs in the Wisconsin river. The banking them upon

Twin river was merely a step in the performance of the contract. The specification of a date by which they were to be so banked was manifestly that advantage might be taken of early freshets, and a speedy delivery secured.    We think it clear that under this contract it became the duty of Monahan to obtain a banking place upon Twin river for the logs.    The law implies as a term of the contract that he was to do all things needful to complete delivery in the Wisconsin river; and, such banking being necessary in the progress of delivery, it became a term of the contract that he should supply the means of banking the logs.    It is in evidence here that the road from the timber to the Twin river had previously been wholly or nearly completed, and that the contract was entered into in view of that fact.    Had it been otherwise, it might with equal propriety be asserted that Monahan would be at liberty to show by parol (the contract being silent upon that subject) that Godkin agreed to make the road, or that he agreed to furnish the teams or provisions for the camp or the other means essential to the proper performance of the contract.    The undertaking to fell, skid, haul, and deliver was the undertaking of Monahan, and it was his duty to supply all things needful to that end, and the banking of the logs was one of the needful things to be done.    The requirement that it should be done demanded of him the obtaining of a place where it might be accomplished as fully as did the contract require him to supply the axes by which the trees might be felled.    It was clearly, therefore, erroneous to permit evidence tending to establish a parol agreement by Godkin before the signing of the contract that would be in direct contravention of any term of the contract, whether specified therein or implied by law.    This case seems to us on all fours with the case of Meekins v. Newberry, 101 N. C. 17, 7 S. E. 655.    There was a written agreement to raft certain juniper mill logs for towing by steamer, and it was sought to be shown by parol that the other party was to furnish the necessary rafting gear for properly rafting the logs. Under the principles we have herein announced, it was held that the contract was complete; that its terms were not exceptive, nor had they suggested any omission, but were comprehensive and absolute; that the stipulation to raft the logs was unconditional,—not to occur upon the doing by the other party of some precedent act, not when he should supply the necessary rafting gear, but that the one undertaking the work should do whatever was necessary and incident to such service; and to permit such parol evidence would be to substantially change the agreement of the parties in respect to that which had been reduced to writing.    It was therefore erroneous in the court below to allow the evidence complained of, or to submit the question to the jury.    They should have been charged that it was the duty of the defendant in error to provide the necessary banking place for the logs, and that for any delay occasioned by failure to obtain a banking place, or arising from the necessity of making a road to a banking place on the Wisconsin river, Monahan was responsible.

The court also charged the jury that, assuming Monahan to be so liable, the change in the banking place was not material to their

consideration, and should only be considered for the purpose of determining whether Monahan had exercised the diligence which he should exercise in the performance of the contract as amended by the change in the banking place to which, as the court charged, Godkin was consenting, upon the condition that it should make no more delay. We cannot so construe the letter of Godkin. He had been informed by Monahan that a banking place on the Twin river, in township 41, could not be obtained. This was six weeks after the making of the contract. He writes, protesting that Monahan had undertaken to secure the banking ground:

"Now, I have no objections to your putting them [the logs] in the Wisconsin river below [above?] where the Twin river empties in, as cheap as you can, but I do object to your doing anything that will interfere with the logs being delivered in the boom as early as if put in as the contract calls for."

This is no consent to the banking of the logs on the Wisconsin river in the sense that it waives or condones Monahan's default. He simply recognizes the situation and the default, and consents to the employment of other means to be adopted by Monahan to put the logs in the Wisconsin river if such act does not interfere with the delivery of the logs within the time required by the contract. In other words, he says that he has stipulated for the banking of the logs on or before the 20th day of March, 1893, provided the logging season permit, so that advantage may be taken of the early freshets, and a speedy delivery assured. He recognizes the fact that Monahan has, through default, been unable to comply with one term of the contract, and procure the banking place upon the river designated, and states that he has no objection, under the circumstances, that the banking be done upon the Wisconsin river if it shall not interfere with the same early delivery which was contemplated by the banking of the logs upon the Twin river. We perceive here no waiver of any right to hold Monahan responsible for default; and in so far as that default operated to prevent him from making delivery within the time specified, and in so far as it operated to prevent delivery of the logs during that logging season, with the resultant injury, if any, to the logs left in the woods, Monahan must be held responsible.

We are also of opinion that the court erroneously stated the law in its charge that Monahan was required only to use such reasonable and proper diligence as a man of ordinary care and prudence would use in his own affairs; that, in starting upon the work, he would be required and expected only to make such provision as to the number of teams and men and diligence in pushing the work as would ordinarily be required in ordinary seasons. The contract was absolute to deliver and to bank the logs by the time stated, with the single limitation, "provided the logging season permit." The measure of the duty of Monahan under the contract was not that of ordinary care. His duty was absolute to do the things he had undertaken to do, and by the time stated, unless, and only unless, he was prevented therefrom by the nature of the logging season. Lumber Co. v. Chapman, 42 U. S. App. 21, 20 C. C. A. 503, and 74 Fed. 444. He was required to make delivery as he had agreed, and failure to deliver seasonably

could not be excused unless, by reason of the severity of the logging season, all proper efforts to fulfill the contract were unavailing, and he was bound to anticipate conditions of season which, though more severe than usual, were known in that region to be likely to occur.

With respect to the instructions requested and denied, that Monahan, failing to haul all the logs, during the logging season of 1892–93, could not recover for hauling the remaining logs during the ensuing season, we remark that the record states that these logs were hauled without the consent of Godkin, but were by him run down the Wisconsin river from the banking ground, and that Monahan paid the cost of running them from the banking ground to the mouth of the Twin river, the designated place of delivery under the contract. We understand this statement to mean that, while Godkin did not previously consent to the hauling of the logs, he took possession of them at the banking ground, and ran them down the river, and received and accepted from Monahan the cost of running them to the mouth of the Twin river. We do not gather from this statement that Godkin forbade the hauling of the logs, but simply that he had not actively consented thereto prior to hauling. Undoubtedly, the contract remaining executory, Godkin could stop performance by explicit direction to that effect, paying to Monahan the profits of hauling. Whether the contract could be held to be executory after the close of the logging season we need not now consider; but if Godkin, with knowledge that Monahan had hauled the logs, accepted them from him at the banking ground, and ran them down the river, and took from Monahan the cost of running them to the mouth of the Twin river (the designated place of delivery under the contract), it was, we think, proper to submit to the jury the question whether Godkin did not thereby recognize the contract as in force with respect to the obligation of Monahan to haul the logs, and whether he did not accept delivery of them. If such acceptance were found, it would not operate as a waiver of damages sustained by delay in delivery, but would avail to require compensation for the hauling. The instruction, being inconsistent with this view, was properly refused.

We cannot close this opinion without a word of commendation to counsel upon both sides for the admirable manner in which the bill of exceptions presented to our consideration has been prepared. The record of a trial continuing during four weeks is condensed, and the exceptions fully presented, in 16 printed pages of this record. The paper is a model that the bar should copy after. It has become much too common in the preparation of a bill of exceptions for the lawyer to abandon his function to the stenographer, and to reproduce as a bill of exceptions the stenographic report of the trial. This course may save counsel labor, but it is neither lawyer-like nor just to court or to client. It involves on the part of the former the wasteful expenditure of time in searching a mass of irrelevant testimony embodied in the bill, to ascertain the exact bearing of the errors assigned, and it imposes upon the latter the unnecessary expenditure of money in printing a mass of irrelevant testimony.

The judgment will be reversed, and the cause remanded, with directions to the court below to award a new trial.