## In re WITTENBERG VENEER & PANEL CO.

(District Court, E. D. Wisconsin. May 4, 1901.)

1. BANKRUPTCY—PREFERENCE—TRANSFER WHILE SOLVENT.

An assignment or transfer of fire insurance policies by the insured as collateral security for an antecedent debt is not rendered void as a preference by the bankruptcy of the insured within four months thereafter, under Bankr. Act 1898, § 60, where at the time the transfer was made the insured was solvent, within the meaning of the act, and became insolvent only by reason of the fire which destroyed the insured property.

2. INSURANCE—TRANSFER OF INTEREST IN POLICY—VALIDITY.

A corporation mortgagor procured a further loan from the mortgagee, and at the time agreed that policies of insurance on the mortgaged property, which were payable to the mortgagee as his interest might appear, should be kept in force, the premiums to be paid by him if the mortgagor was unable to pay them, and should stand as collateral security for the new loan. A note for such loan was executed containing a clause reciting the deposit with the payee of "certain property as stated below, as collateral security," and the further description, "Fire insur-

108 F.—38

ance policies should fire occur." The policies on the property were not in the possession of either of the parties, but were in the custody of the agent through whom they were procured, and who was to renew them as occasion required. *Held.* that the transaction was not a common-law pledge, to the validity of which an actual delivery of the policies was essential, but an agreement giving the creditor a beneficial interest in the personal contract of insurance, from which arose an equitable lien upon the proceeds of the policies in his favor, a loss having occurred, and the companies having paid the same without objection.

3. SAME—TRANSFER AFTER LOSS—PRIOR EQUITIES.

The attaching of riders to insurance policies under which a loss had occurred, by direction of the assured, making such loss payable to a creditor holding notes of prior date, where there had been no definite agreement previously for such security, gave the creditor only such interest in the proceeds as the assured then possessed, and subject to all equities outstanding against such proceeds in favor of others before the loss occurred.

In Bankruptcy. On review of a portion of the order made by the referee respecting the disposition of a fund arising out of fire insurance placed upon the property of the bankrupt, and the payment of the loss thereunder.

The fire occurred shortly before the commencement of the proceedings in bankruptcy, and, the general liability of the insurers being undisputed, they have paid in the amount of the insurance as adjusted, $11,833.35, to be awarded to each claimant as the court shall decree. It is further undisputed that the Wittenberg Veneer & Panel Company was not insolvent, within the meaning of the bankrupt act, prior to the loss by fire, but became insolvent through such loss. Claims allowed in favor of Edward Daskam, as mortgagee, for $6,000 and interest, and for $736.10 and interest, covering payments made on his behalf for insurance premiums, are not contested. The remaining sum is claimed (1) by the trustee as belonging to the estate in bankruptcy; (2) by Edward Daskam on an indebtedness for which he alleges the insurance was held as collateral; and (3) by R. W. Roberts on an indebtedness for which two of the policies are alleged to be held as collateral; and either of these claims by way of lien is in excess of the fund so remaining. The finding by the referee upon this issue is in favor of Roberts, and each of the other claimants petitions for review of this portion of the order.

Felker, Stewart & McDonald, for trustee.

Goodrick & Hay, for R. W. Roberts.

Mylrea & Bird, for Insurance Co.

T. W. Hogan, for Edward Daskam.

SEAMAN, District Judge (after stating the facts as above). The manufacturing plant and stock of the Wittenberg Veneer & Panel Company were destroyed by fire on July 23, 1899, and the corporation, becoming insolvent thereby, made an assignment for the benefit of creditors, August 1, 1899. Proceedings for involuntary bankruptcy were commenced October 19, 1899. When the fire occurred six insurance policies remained in force, aggregating $12,500,—two written in 1898, covering $3,500, and four renewals made June 1, 1899, for $9,000.—and each containing a clause for payment of loss to the mortgagee as its or his interest may appear. Other policies to the amount of $2,500 had lapsed. After the adjudication of bankruptcy, the loss was adjusted at $11,833.35, and was paid to the trustee for distribution herein, as ordered by the court. The triangular

controversy over the portion of this fund which remains, after paying up the mortgage and the advances for insurance premiums, is substantially this: (1) The trustee contends—First, that no pledge of the insurance or lien of any character was created in fact to secure either Daskam or Roberts as creditors; and, second, that both transactions are void as preferences, within the terms of the bankruptcy act, in any view of the testimony. (2) Edward Daskam claims an equitable assignment or lien, based upon contract, whereby the insurance was to stand as security for a loan of $4,000 made by him through the First National Bank of Antigo, but with no manual delivery of the policies, no policies specified, and no clause inserted to make the loss thus payable. (3) R. W. Roberts bases his claim upon notes made by the corporation, and renewed from time to time, amounting to about $3,600, and upon a clause made July 21, 1899, when all the notes were past due, annexed to the two policies issued in 1898, providing for payment of loss to Roberts.

1. The first question raised by the trustee, whether a lien was created in either transaction, involves the consideration of each claim upon the merits; but the second objection challenges the validity of the alleged liens, under the provisions of section 60 of the bankrupt law, and the bearing of the statute may well be considered at the threshold of inquiry. It is true that the transaction on which the creation of a lien depends in each claim falls within the period of four months preceding the filing of the petition in bankruptcy; but it is equally true, under the testimony, that the corporation was solvent, within the definition of the act, up to the occurrence of the fire, on July 23d. The inhibitions of section 60 apply only to preferences given when the debtor is insolvent in fact, and if a lien was perfected before the fire, in the case as presented, it is not affected by that section, although it may remain open to question under section 67, as to "a present consideration." On the other hand, if actual delivery and possession of the insurance policies was essential to the creation of the lien in either case, the testimony is satisfactory, if not in all particulars clear, that the policies remained in the hands of the insurance agent, and there was no manual delivery to either claimant until after the fire. Unless the agent can be regarded as the custodian for these claimants, there was no actual delivery, and, on the view assumed, the lien would become effective only after the existence of the insolvency produced by the fire. If such is the case found under either claim, the question would remain whether the claimant then "had reasonable cause to believe his debtor to be insolvent" as the result of the fire (vide In re Eggert, 43 C. C. A. 1, 102 Fed. 735, 741), and the answer would not be difficult under the circumstances disclosed. It becomes necessary, therefore, to ascertain the character and constituents of the claims, respectively, to determine their status, both under the general rule and under the bankrupt act.

2. Edward Daskam held a mortgage on the plant of the corporation for the principal sum of $6,000, which covenanted for insurance to be made payable to the extent of his interest, and all policies so provided. In the spring of 1899 he made a further loan of $4,000 to the corporation, through the First National Bank of Antigo, under

circumstances and terms which are shown by the testimony substantially as follows: In January, 1899, the corporation required means for its operation, and the president, together with Edward Daskam, applied to the bank above mentioned for a loan of $5,000. A tripartite parol arrangement was then made—and on the part of the bank recited in a letter of January 12th—that the bank would loan that amount, upon indorsements to be given by Daskam, together with his mortgage on the plant to be placed as collateral, and insurance on the plant to be payable to the bank in case of loss. When the money was furnished, however, the amount was made $4,000 instead of $5,000, advanced at several times on the personal notes of Edward Daskam to the bank, with the mortgage and insurance as collaterals, and without notes on the part of the corporation; so that the transaction was carried out as (1) a loan by the bank to Daskam, and (2) a simultaneous loan by Daskam to the corporation. In accordance with this final arrangement, after completion of the advances, on May 15, 1899, the corporation debtor made a promissory note for $4,106 (covering the accrued interest), payable to the order of Edward Daskam on or before August 10th, containing a printed clause which recited the deposit with the payee of "certain property as stated below, as collateral security to this note," with provision for sale in case of default, followed by this description only in writing: "Fire insurance policies should fire occur." And this instrument was likewise deposited with the bank as further collateral. The testimony of the three parties to these transactions concurs in showing the oral agreements which led up to the making of the instrument of May 15th; that they expressly agreed that insurance was to be kept up on the property of the corporation as security for this loan; that the agent was "to renew the policies from time to time," and, if the corporation "was not able to take care of the premiums," the bank and Edward Daskam "were to look after it and pay." In the opinion filed by the referee, it is held that these oral agreements were merged in the writing of May 15th, and that the testimony referred to was inadmissible (citing Godkin v. Monahan, 27 C. C. A. 410, 83 Fed. 116); but I am of opinion that this testimony does not tend to contradict or vary the writing; that it is needful to explain the terms which are otherwise indefinite, and thus becomes admissible to show the meaning of the transaction. No policies are pointed out and none appear to have been delivered with the writing, and, while there is testimony tending to show that some of the policies of insurance were at indefinite times in the course of the transaction in the hands of the bank, it clearly appears that all of the policies were in the hands of the insurance agent at and before the time of the fire. It further appears that the premiums were not paid up until after the fire; and then by the bank, presumably under the pre-existing understanding with the agent; that immediately after the fire the agent sent the two policies of 1898, containing the clause in favor of Roberts, to the insured, by mail, pursuant to the direction given July 21st, and delivered the other policies to the bank on its demand; and that no objection is raised by the insurance companies upon either of these facts.

The testimony shows, therefore, that it was the intention of the parties in making and accepting the loan that insurance was to be kept up on the property of the debtor to stand as security for the advances so made, and the further question to be considered is this: Was a contract made to that end which is enforceable against the insurance proceeds? The referee held that the contract was one of pledge only; that "the thing pledged was not taken possession of"; and concluded that no pledge was perfected. If these premises were rightly assumed, the conclusion was inevitable, as possession is "of the very essence" of such contract. Casey v. Cavaroc, 96 U. S. 467, 477, 24 L. Ed. 779. I am of opinion, however, that the transaction was not a "pledge," within the common-law definition of that term, but was an agreement for a beneficial interest in the personal contract of insurance,—a mere chose in action,—from which an equitable lien arises in favor of the promisee against the proceeds. 1 Jones, Liens, c. 2; Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753. These propositions are well established by the authorities: That the policy of insurance is a mere personal contract between the assured and the underwriter, to indemnify the former against any loss he may sustain by the destruction of the insured property; that it is a chose in action, and an interest in the proceeds may be assigned by parol as well as by deed; that no right to the benefits of the policy attaches in favor of either mortgagees or creditors, in the absence of a trust or contract to that effect; and that an equitable lien arises in favor of either mortgagee or creditor when the assured enters into contract in any form that the proceeds shall be so applied, no valid objection to the transaction being raised by the insurer under any provision of the policy. This general doctrine as to the nature of the insurance contract, and an appropriation of payment by the assured, is stated in the text-books, and many cases cited on the argument,—most frequently in reference to the claims of mortgagees to the proceeds,—and with the remark, in some instances, that "third persons, having an insurable interest in the property," may thus receive the benefits of the insurance. If the possession by the substitute payee of an insurable interest was thus intended to be recognized in the earlier cases as a requisite for the lien, aside from restrictions made in the policy, that distinction no longer prevails, and is clearly set aside by the decision in Wheeler v. Insurance Co., 101 U. S. 439, 441, 25 L. Ed. 1055. Indeed, the rule upheld in that case seems to be decisive in favor of the claim under consideration here, and the following are deemed sufficient additional citations for the several propositions stated above: Carter v. Rockett, 8 Paige, 437; Nordyke & Marmon Co. v. Gery, 112 Ind. 535, 13 N. E. 683; Merrill v. Insurance Co. (Mass.) 47 N. E. 439; Richardson v. White (Mass.) 44 N. E. 1072; Dickey v. Bank (Md.) 43 Atl. 33; Heller v. Bank (Md.) 43 Atl. 800, 45 L. R. A. 438; Williams v. Ingersoll, 89 N. Y. 508, 521; Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309; Miller v. Aldrich, 31 Mich. 408; Swearingen v. Insurance Co., 52 S. C. 316, 29 S. E. 723; Carrington v. Eastman, 1 Pin. 650; Baillie v. Stephenson, 95 Wis. 500, 70 N. W. 660. And these federal cases, which are well in point on all phases: Stout v. Milling Co. (C. C.) 13 Fed. 802;

Aultman v. McConnell (C. C.) 34 Fed. 724; In re Little River Lumber Co. (D. C.) 92 Fed. 585.

On my understanding of the doctrine thus sustained, the claimant Daskam is entitled to an equitable lien, of rank dating from May 15th, when the written instrument was made, if not of the prior date of the oral agreement. Actual delivery of the policies, and continuous possession by the transferee, are not indispensable to create and preserve such lien (Spring v. Insurance Co., 8 Wheat. 267, 5 L. Ed. 614, and cases cited), as in the case of the common-law pledge, although the fact of delivery or nondelivery may be important in many instances as evidence bearing upon the question of complete execution of the agreement for a lien. In the present case the policies were not in the hands of the assured, but were held by the insurance agent,—with the possible exception, before mentioned, of policies deposited for a time in the bank under the agreement,—and it is obvious that the custody of the agent was there treated by the parties as sufficient performance of that part of the agreement. Equity will so regard the possession on this inquiry as to the true intention of the transaction.

3. The claim of R. W. Roberts remains to be examined, and the primary question is whether it presents equities which outrank the lien found in favor of Daskam, as above indicated. If not, the existence of a lien in fact, and its standing under the bankruptcy act, are immaterial, for the reason that precedent allowance of the Daskam claim exhausts the insurance fund. Solution of the inquiry in that view is not difficult. There is no proof that any equity attached in favor of Roberts prior to July 21, 1899, when the agent placed on the two policies of 1898, by direction of the assured, the clauses or riders that loss was payable to Roberts. This was by way of security for past-due notes, and with no definite agreement for such security when the notes were made or when the indebtedness was contracted. It is true that preliminary talk appears about insurance, coupled with a mortgage to secure the loan, but it was of indefinite suggestions only, and neither the original loans nor renewals of the notes were made upon the condition or promise of such insurance. Up to July 21st, for aught that appears, there was neither express request on one side nor promise on the other for such security. The mere fact that the assured directed the making of such provision at that time, either voluntarily or by solicitation, can give Roberts no standing in equity over the pre-existing lien of Daskam. He acquired, at the utmost, such interest only as the assured possessed and had the right to give,—a mere equitable interest, and subject to all the equities outstanding against it. Fairbanks v. Sargent, 104 N. Y. 108, 115, 9 N. E. 870, and authorities cited. Surely, that must be the rule applicable here, where there was no new consideration for the arrangement, and no act of delivery or acceptance of the provision before the loss occurred. The policies were not negotiable instruments, were not even assignable at common law, and, while their face appearance and possession may have carried the import of ownership, such import is of prima facie value only. The mere bona fides of an equitable transferee of the policy will not over-

ride a prior equity of like bona fides. On this view, the Roberts claim is subordinate to that of Daskam, and the order of the referee must be overruled, with direction to enter an order in favor of the claimant Daskam in accordance with this opinion. Let the ruling be so certified.