George McKeage, Respondent, v. The Hanover Fire Insurance Company, Appellant.

Gas fixtures, which are simply screwed on to the gas pipes of a building and can be detached by unscrewing them, and mirrors which are not set into the walls, but are put up after the completion of the building, being supported by hooks or other supports driven in or attached to the walls, and which can readily be detached from these supports without interfering with or injuring the walls, form no part of the realty : they are simply chattels, not appertaining to the building ; and so, do not pass by deed or under a mortgage of the premises.

In respect to such articles, the mere declaration of the owner that he intends them to go with the house does not make them realty.

Where, however, such chattels are specially bargained for and purchased by a purchaser of the premises, they pass by delivery, although not mentioned in the deed, and no bill of sale of them is given.

M., who had thus purchased and had been put into possession of certain premises, with the gas fixtures and mirrors, executed a mortgage on the premises to defendant. No mention of said chattels was made in the mortgage. When he applied for the loan, to secure which the mortgage was given, he stated that the house included gas fixtures, mirrors, etc., and that they were to go with it. The premises were afterward sold and conveyed to S., who sold and conveyed to W., the deeds stating the conveyance to be subject to the mortgage ; no mention was made of said chattels. The grantees went into possession ; while so in possession W. executed a bill of sale of said chattels to McK., to whom he had also contracted to sell the house. McK. went into possession, and subsequently paid most of the purchase-price. In an action for the alleged conversion of said chattels by plaintiff, who claimed as assignee of McK. against defendant, who had taken possession under foreclosure sale, held, that the possession of W., at the time he executed the bill of sale,

was *prima facie* evidence of his title ; that the representations and statements made by N. when negotiating the loan did not change the char-acter of the property, and could not affect subsequent purchasers for value having no notice of them, although as between defendant and N., the former might have an equitable lien.

Also *held*, that the fact that McK. was present at the foreclosure sale and failed to give notice of his claim did not estop him from asserting it ; that the property offered for sale being simply the house and lot, and no announcement having been made that the chattels in question were included, there was no occasion for protest.

The assignment from McK. to plaintiff was after the cause of action for the conversion had accrued. The assignment transferred the title of McK. to the property as well as the cause of action. *Held,* that plaintiff could maintain the action ; also, that the consideration of the assignment was not material so long as it was valid as between the parties to it.

(Argued March 10, 1880 ; decided April 20, 1880.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, in favor of plaintiff entered upon an order overruling defendant's exceptions and directing judgment on verdict. (Reported below, 16 Hun, 239.)

This action was brought for the alleged conversion of certain gas fixtures and mirrors in a dwelling-house in the city of Brooklyn.

The facts appear sufficiently in the opinion.

*C. E. Tracy* for appellant. The personal property sued for became a part of the realty as "fixtures," and it was such at the time of the mortgage to defendant, and at the time of its purchase at the foreclosure sale. (*Potter* v. *Cromwell,* 40 N. Y. 280 ; *McRea* v. *Bank of Troy,* 66 id. 489 ; *Bishop* v. *Bishop,* 11 id. 123 ; *Snedecker* v. *Warring,* 12 id. 170 ; *Tift* v. *Horton,* 53 id. 382.) Facility of detachment from the realty, and a possible value of the articles when so detached or severed, do not bear upon the question of intention. (*Funk* v. *Brigaldi,* 4 Daly, 359 ; *Shaw* v. *Senk,* 1 id. 487 ; *McRea* v. *Bank of Troy,* 66 N. Y. 499.) A mortgage upon chattels, executed prior to the annexation of the same to the freehold, will not prevent their passing on a conveyance of the realty, after they

are actually annexed. ( *Voorhees* v. *McGinnis*, 48 N. Y. 278; *McRea* v. *Bank of Troy*, 66 id. 500.)

*Edward T. Bartlett* for respondent. The ordinary distinction between real estate and chattels exists in the nature of the subjects, and cannot in general be changed by the convention of the parties. (*Ford* v. *Cobb*, 20 N. Y. 348; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 311, 314; *McRea* v. *Cent. Nat. Bk. of Troy*, 66 N. Y. 489; *Potter* v. *Cromwell*, 40 id. 287·; *Ford* v. *Cobb*, 20 id. 344; *Bishop* v. *Bishop*, 11 id. 123; *Snedecker* v. *Warring*, 12 id. 170; *Voorhees* v. *McGinnis*, 48 id. 278. The mirrors and gas fixtures, when duly attached to the house for use, were personal property. (7 Pothier's Pandects, 110; *Vaughen* v. *Haldeman*, 33 Penn. 523; *Rogers* v. *Crow*, 40 Mo. 91; *Montague* v. *Dent*, 10 Rich. L. R. [So. Car.] 135; *Shaw* v. *Lenke*, 1 Daly, 487; *Lawrence* v. *Kemp*, 1 Duer, 363; *Funk* v. *Brigaldi*, 4 Daly, 359; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 314; *Beck* v. *ReBow*, 1 P. Wms. 94.) The plaintiff's assignor lost no rights by leaving the mirrors and gas fixtures in the house after the foreclosure sale. (Taylor's Landlord and T., § 552; *Lawrence* v. *Kemp*, 1 Duer, 363.)

Rapallo, J. The mirrors and gas fixtures in controversy were placed in the house in 1870 by Mr. Curtis, who was then owner thereof. We concur with the court below in its conclusion that they were not so attached to the building as to form part of the realty. Gas pipes which run through the walls and under the floors of a house, are permanent parts of the building, but the fixtures attached to these pipes are not. They are not permanently annexed but simply screwed on projections of the pipes from the walls, left for that purpose, and can be detached by simply unscrewing them. It was shown that the fixtures in question were simply screwed on in the usual way. The mirrors were not set into the walls, but were put up after the house had been built, being supported in their places by hooks or supports, some of which were fastened with screws to the wood work and others driven into the walls, and were capable

of being easily detached from these supports without interfering with or injuring the walls.   All these articles were, in their nature, mere furniture, and, therefore, chattels, and not appurtenances to the building.   ( *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 311; *Vaughen* v. *Haldeman*, 33 Penn. 523; *Rogers* v. *Crow*, 40 Miss. 91; *Montague* v. *Dent*, 10 Rich. L. R. [So. Car.], 135; *Shaw* v. *Lenke*, 1 Daly, 487; *Lawrence* v. *Kemp*, 1 Duer, 363; *Beck* v. *Rebow*, 1 P. Wms. 94.)   In respect to such articles, the mere declaration of the owner that he intends that they shall go with the house does not make them realty. They no more constitute part of the realty than would pictures supported by fastenings driven into the wall.   Assuming that such fastenings or supports become part of the building, it does not follow that the mirrors or pictures which they support acquire the same character.

On the sale of the house by Curtis to Nelson, the gas fixtures and mirrors were specially bargained for and purchased by Nelson, with the house.   They were not mentioned in the deed, nor was any bill of sale of them given, but these were not necessary, for the title to the chattels passed to the purchaser by delivery.

Nelson, after this purchase, executed the mortgage to the defendant, under the foreclosure of which it claims these chattels.   He testified that they were in the house when he mortgaged it, and that when he applied for the loan he represented to the defendant that they were to go with the house; that the house included mirrors, gas fixtures and so forth.   No mention of them was, however, made in the mortgage, nor was any separate mortgage of them given.

Nelson afterward sold and conveyed the house and lot to one Shrope who afterward conveyed to Cornelius C. Westervelt. These conveyances stated that the premises conveyed were subject to the mortgage to the defendant, but made no mention of the gas fixtures and mirrors.

The plaintiff's title to them is founded upon a bill of sale executed by Westervelt to William McKeage, dated the 11th of December, 1874, and delivered in the same month, purport-

ing to have been made in consideration of $1,500. Westervelt's title to the fixtures does not appear, except from the statement in defendant's answer, that they passed, by the deeds, from Nelson to Shrope and from Shrope to Westervelt. Whether there was, or was not, any further transfer, written or verbal, was not shown on the trial. They may have passed in the same way that they did from Curtis to Nelson. It was shown, however, that Westervelt was in possession of them at the time of the execution by him of the bill of sale to William McKeage, and that he delivered possession of them to McKeage, to whom he had contracted to sell the house, together with the gas fixtures and mirrors. This was sufficient *prima facie* evidence of Westervelt's title, which was not disputed.

Before the foreclosure sale McKeage paid a large part of the purchase-money payable under his contract with Westervelt, by conveying to him certain real estate in New Jersey, which was, by the contract, to be taken as a payment of $23,000 of such purchase-money.

The sale, under the foreclosure of the defendant's mortgage, took place in April, 1875. The defendant became the purchaser and received a deed from the referee; this deed contained no mention of the articles in controversy. The defendant, however, claimed that they passed by this deed as part of the realty, and prevented McKeage from removing them.

The claim that they became part of the realty by annexation cannot be sustained, for the reasons before stated, but the defendant contends that by reason of the verbal representations and statements made by Nelson, when negotiating for the loan, they should be deemed part of the realty and covered by the mortgage. These statements could not change the character of the property, and even if some equity, as between Nelson and the defendant, could be claimed by reason of these representations, subsequent purchasers for value, having no notice of them, could not be affected thereby. It does not appear, nor is it alleged, that before the foreclosure sale, either Shrope, Westervelt or McKeage had any such notice, and it does appear that Wm. McKeage, before defendant claimed the arti-

cles, paid a large part of the purchase-money payable under his contract with Westervelt, which contract embraced the chattels in question. There was no legal mortgage of them, and the purchaser from Westervelt, without notice, was not affected by a merely equitable lien of the mortgagee, if any such existed. Nor was any such lien asserted or enforced in the foreclosure suit. We do not, however, intend to decide that such a lien did exist.

It is further claimed that Wm. McKeage, having been present at the foreclosure sale, and having failed to give any notice of his claim of title to the chattels, his silence estops him from asserting it against the purchaser. It is sufficient to say on this point, that the property exposed for sale was the house and lot only, and there was no announcement that the chattels in question were to be included in the sale. There was no occasion, therefore, for any protest or other proceeding on the part of McKeage.

The plaintiff claims by assignment from Wm. McKeage executed after the cause of action for a conversion of the property by the defendant had accrued. This assignment transferred McKeage's title to the property as well as the cause of action. The consideration for it was not a material subject of inquiry so long as it was valid between the parties, and a recovery by the plaintiff would protect the defendant against any claim by Wm. McKeage.

The judgment should be affirmed.

All concur, except Andrews, J., absent.

Judgment affirmed.