WILLIAM CRANSTON, EXECUTOR OF NICHOLAS H. CHESE-
BROUGH, DECEASED, v. THEODORE L. BECK.

Argued June 4, 1903—Decided November 9, 1903.

Mirrors resting on mantels or slabs and secured at the top by iron spikes driven into the wall, through which screws were driven into the mirror frames, which had been treated by the owners both of the personal property and the realty as personal property, are, under the circumstances of this case, held to be personal property, although the frames were painted in the same style as the woodwork of the room.

On *certiorari* to the District Court of Elizabeth.

Before Justices GARRISON, GARRETSON and SWAYZE.

For the plaintiff and defendant in *certiorari,* *Corra N. Williams.*

For the defendant and prosecutor in *certiorari,* *George S. Hobart* (*Corbin & Corbin,* on his brief).

The opinion of the court was delivered by

SWAYZE, J.   This is an action of replevin to recover certain mirrors in a hotel known as the "Park House," in Summit. The plaintiff claimed them as personal property, the defendant as owner of the real estate.   Both the real estate and the mirrors at one time belonged to Lyons.   Hicks was her tenant, hiring the personal property and renting the real estate.   In 1898 Lyons conveyed the personal property, including the mirrors in question, to Hicks by a bill of sale. Subsequently Chesebrough bought the real estate and leased it to Hicks.   At that time Hicks gave Chesebrough a chattel mortgage, conveying the mirrors and other personal property to Chesebrough to secure a loan.   Hicks was then in possession of the hotel and the personal property as tenant under Chesebrough.   After Chesebrough's death, Hicks conveyed the personal property in the hotel to the present plaintiff by a bill of sale, which does not specifically mention the mirrors, but, after specifying a large amount of personal property, conveys all the other goods and chattels and other personal property of every kind contained in the building. The situation, then, was that Cranston, as executor, claimed title under the bill of sale to the mirrors as personal property.   While he had this title he conveyed the real estate, as executor of Chesebrough, to the defendant.   Nothing was said by either the plaintiff or the defendant, at the time of this conveyance, about the mirrors.   The mirrors were of French plate glass, some of them resting on mantels supported at the top by iron spikes driven into the wall.   The spikes were flattened at one end, and through a hole in this end screws were driven into the mirror frames to hold the mirrors.   Some of the mirrors rested on slabs supported by brackets.   All of them rested against the wall, and the frames were painted in the same style as the woodwork of the room in which the mirrors were.   It is insisted, on the part of the defendant, that the evidence disclosed that the mirrors were part of the real estate, and that it was necessary for the plaintiff, in order to make title to them, to prove title to

real estate, and that this necessity ousted the court of juris-
diction. By the act of 1902 (*Pamph. L., p.* 368), the thir-
tieth section of the District Court act of 1898. is amended
by striking out the proviso that the act shall not extend
to any action wherein the title to any lands and real estate
shall come in question. This amendment clearly evinces
an intention to extend the jurisdiction of the District Courts
to actions involving the title to lands. It is argued that
such an extension of jurisdiction is unconstitutional, because
the jurisdiction of the Supreme Court, except so far as it
may have been conferred upon the Circuit Courts, is ex-
clusive. It is unnecessary, now, to decide this question, for,
in our judgment, the case does not involve the title to lands.
We agree with the judge of the District Court that the
mirrors in question were not so annexed to the building that
they became a part thereof. They were treated by the parties
from the beginning as personal property, and the fact that
the title was at one time in the executor, who, while holding
this title to the mirrors, conveyed the real estate to the de-
fendant, does not change the character of the property. It
is not necessary to decide whether or not a conveyance of
the real estate by an owner who was at the same time the
owner of the mirrors would operate to convey, also, the
mirrors, for as far as appears in the case the conveyance of
real estate made by the executor might have been made by
virtue of a power in the testator's will, and there is nothing
to show that the executor had at any time any estate in the
land. The case does not, therefore, raise the same question
which would be raised by a conveyance made by the owner
of both the real estate and the personal property. The cases
of *McKeage* v. *Hanover Fire Insurance Co.,* 81 *N. Y.* 38,
and of *Loan* v. *Gregg,* 55 *Mo. App.* 581, involved the
question whether mirrors attached as the mirrors were in.
the present case were personalty or realty, and the conclusion·
was reached that they were personal property. With this
conclusion we agree. The case differs from a case like that
of *Spinney* v. *Barbe,* 43 *Ill. App.* 585, in which the mirror

was firmly attached to the chimney brace by a frame mould-ing and seat, which was of the same character and finish as the balance of the woodwork and so constructed that after the removal of the mirror a new baseboard was required to take the place of the mirror. The mirror in that case, the court said, constituted a part of the finish of the room as much as the base and bead-moulding on other portions of the wall. In *Mackie* v. *Smith,* 5 *La. Ann.* 717; 52 *Am. Dec.* 615, recesses four and one-half inches deep were cut into the walls of the room to receive the mirrors, and the mirrors were secured in their places in the recesses by means of architraves or large wooden frames, which were nailed to blocks of hard wood fastened in the wall. The frames of the mirrors had grooves in them corresponding to the tongues in the architraves, and nails were driven from one to the other to make the glass more secure. The recesses were left rough and unfinished, the mirrors and architraves being clearly intended as a permanent finishing of the wall. These facts rendered it clear, we think, as the court held in that case, that the mirrors were intended to be a part of the house; and they distinguish that case from this, where the mirrors seem to have been placed in the hotel after it was built (as we infer from the facts certified) and were, at any rate, readily removable, having separate frames and being attached only by screws and spikes, as already stated.

This subject has been recently very thoroughly discussed in the House of Lords, in the case of *Leigh* v. *Taylor, App. Cas.* 157 (1902). This case involved the title to valuable tapestries. They were annexed to the house in the following way: Strips of wood were placed over the paper which covered the walls and were fastened by nails to the walls; canvas was stretched over the strips of wood and nailed to them, and the tapestries were stretched over the canvas and fastened by tacks to it and the pieces of wood. Mould-ings, resting on the surface of the wall and fastened to it, were placed around each piece of tapestry. The Lord Chan-cellor, in the course of his opinion, said:

"One principle, I think, has been established from the earliest period of the law down to the present time, namely, that if something has been made part of the house it must necessarily go to the heir because the house goes to the heir, and it is part of the house. That seems logical enough. Another principle appears to be equally clear, namely, that where it is something which, although it may be attached in some form or another to the walls of the house, yet, having regard to the nature of the thing itself and the purpose of its being placed there, is not intended to form part of the realty, but is only a mode of enjoyment of the thing while the person is temporarily there, and is there for the purpose of his or her enjoyment, then it is removable and goes to the executor."

We think that mirrors are generally regarded, as they were in the present case, as a part, not of the house, but of the furniture of the house, and although mirrors may be so attached that it would be the necessary inference that they were intended to form part of the house, we think no such inference can properly be drawn from the facts of the present case.

We agree, therefore, with the conclusion reached by the District Court judge, that the mirrors were personal property, and the judgment should be affirmed, with costs.