Security Trust Co. *v.* Temple Co.    *67 Eq.*

SECURITY TRUST COMPANY

*v.*

TEMPLE COMPANY et al.

[Filed August 25th, 1904.]

1. To constitute a fixture there must be an actual (or constructive) annexation of the chattel to the realty, with an intention of making a permanent accession to the freehold, and the application of the chattel to the use for which the realty, in connection with which it is used, is appropriated; and in determining the question of annexation more weight is to be given to the intention of the owner than to the method adopted in making the annexation.

2. Chandeliers used for lighting a building, though only screwed on, are sufficiently attached to the realty to become fixtures.

3. Stage scenery, used in connection with stage fittings, which are a part of the realty, and when set up, fitting into and held in place by the stage fittings, but, when not in use kept in a storeroom in the building especially provided therefor, is constructively annexed to the realty and a part thereof.

4. Furniture used on a theatre stage, and in no way annexed either physically or constructively to the realty, is not a part of the realty.

5. A portable sectional dance floor, only in place when an auditorium is being used for dancing, and immediately thereafter removed and stored, is not a fixture.

6. Where different persons furnish different articles for a building, any right of lien of one of them upon the article furnished by him as against a prior mortgagee and the others, is waived by his receiving a bond in payment, secured by a mortgage on such and other property, made to a trustee to secure the different bondholders.

On bill to foreclose.

*Mr. Herbert A. Drake* and *Mr. J. Willard Morgan*, for the complainant.

*Mr. Norman Grey*, for the Penn Mutual Life Insurance Company.

*Mr. Conrad Ott,* for M. W. Taylor and M. W. Taylor Amusement Company, defendants.

BERGEN, V. C.

The question to be determined is whether certain property, personal in its character, has been so annexed to the realty as to become a part of it. In 1891 the "Masonic Temple Association, of Camden, New Jersey," was duly incorporated under the laws of this state, and by two deeds of conveyance—one dated July 20th, 1891, and the other May 9th, 1892—became the owner of certain real estate on Market street, in the city of Camden, and caused to be erected thereon a large and substantial building, the portion of it fronting on Market street being finished for stores and shops, with rooms suitable for office purposes on the stories above, and in the rear a large room, capable of seating about one thousand people, was fitted and completed in a manner suitable for public exhibitions, and commonly called a theatre; in this part of the building there was also provided a room, called, in this case, "a banqueting-room." The partition wall between the store and office part of the building and the theatre was substantially built of brick, in which there was an opening of considerable size, permitting ingress and egress to the theatre from a passageway leading from Market street, between the stores, to this entrance, which could be, and was, closed by doors when the theatre was not in use. The articles over which this controversy has arisen were furnished under separate contracts and by different persons during the construction and finishing of the building, and the various contracts, so far as the articles to be furnished were applicable, related to the whole of the building. During the course of the construction, and on August 15th, 1892, the Masonic Temple Association mortgaged the property to the Penn Mutual Life Insurance Company to secure the payment of $50,000, payments on account of which, it was admitted at the hearing, were advanced as the building progressed until the whole sum had been paid. The description contained in this mortgage described only the real estate, with its appurtenances,

in the usual form, and contained no reference to the machinery
or other articles in controversy as distinct therefrom. On July
1st, 1893, the Masonic Temple Association mortgaged to the
Security Trust and Safe Deposit Company the same lands,
"and also" the furniture, stage fittings and other articles, some
of which are the subject of this investigation, to secure the pay-
ment of $30,000. On May 21st, 1894, another mortgage was
executed between the same parties, describing the same real
and personal property, to secure the payment of $8,000, and on
July 8th, 1896, the said Security Trust Company filed its bill
in this court for the foreclosure of said mortgages, making all
persons having interests in said property subsequently acquired
parties defendant; that thereafter such proceedings were had
in said cause that on the 23d day of September, 1896, a final
decree was made therein adjudging the amounts due to the
respective parties, and also that an execution should issue to
the sheriff of the county of Camden, directing him to sell "the
mortgaged premises" for the purpose of raising the sums of
money so found to be due. In pursuance of this decree, an exe-
cution was issued to said sheriff directing him to sell "all that
certain lot or piece of land and premises," following which ap-
pears a description of the land, and also of the furniture and
other articles contained in the mortgage. In pursuance of this
execution the sheriff of the county of Camden sold the mort-
gaged premises to the Security Trust Company, the complain-
ant, and delivered a deed therefor. On December 21st, 1896,
the "Temple Company" was incorporated, and on January 30th,
1897, in consideration of $1, the Security Trust Company con-
veyed to the Temple Company the real and personal property,
by the same description contained in the sheriff's deed to it;
subject, however, to the mortgage of the Penn Mutual company.
On the same day the Temple Company executed and delivered
to its grantor, the complainant, a mortgage on the same prop-
erty, real and personal, to secure the payment of $41,540 of
bonds of one class and $22,880 of bonds of another class. Sub-
sequent to the foregoing occurrences the Penn Mutual Life
Insurance Company caused its mortgage, which was a prior lien

upon the mortgaged premises, to be foreclosed, under which proceedings a sale was had, and on May 26th, 1900, the real estate was conveyed by the sheriff of Camden county to the Penn company, the present owner of the property, the result of this foreclosure being to extinguish all encumbrances and titles acquired after the execution and registry of that mortgage. The title of the Penn company to the real estate is not in dispute, but the complainant insists that all of the property personal in its character, and described in its mortgage of January 30th, 1897, is yet subject to that mortgage as a chattel mortgage, and that the conveyance by the sheriff to the Penn company did not pass this personal estate, although all of these alleged chattels remain in the possession of the Penn company.

Whether a chattel has become a part of the freehold so as to pass with it under a conveyance thereof containing only a description of the land, has been a fruitful source of judicial discussion and determination, with results so various in different jurisdictions as to render hopeless any attempt to reconcile them. Such an effort, however, is not required, so far as this state is concerned, for our court of last resort, in *Knickerbocker Trust Co.* v. *Penn Cordage Co., 66 N. J. Eq.* (*21 Dick.*) *305,* has laid down a broad and liberal rule for the protection of freehold rights against technical construction or fanciful distinctions. There must be an actual annexation of the chattel to the realty, with an intention of making a permanent accession to the freehold, and the application of the chattel to the use for which the realty, in connection with which it is used, is appropriated; and in determining the question of annexation, more weight is to be given to the intention of the owner than to the method adopted in making the annexation. The property which the complainant insists is personal is described in the bill of complaint, and the conveyance under which it claims, as follows:

"All the furniture, stage fittings, scenery, electrical and other machinery, boilers, engines, pumps, tanks, tools, and fittings, elevator, chandeliers, electroliers, gas fixtures, carpets and other property belonging to said Temple Company, contained in and about the building erected upon said lands heretofore known as the Masonic Temple Company building and auditorium, and the boiler and engine-house connected therewith."

From a schedule produced and used on the hearing without objection, it appears that the articles, when specifically enumerated and described, exceed one hundred and fifty in number, but for the purpose of considering the question of their relation to the realty may be classified as follows—*first,* two engines, steam boilers, dynamos, switchboards, pumps in the engine-room, range in the banqueting-room, elevator, and theatre seats fastened to the floor; *second,* electroliers, chandeliers and brackets, commonly called combination fixtures, for lighting the building; *third,* stage fixtures and scenery, including a switchboard connected with the electric wires, for stage use; *fourth,* chairs not fastened to the realty, combination closet, clock, ticket-boxes, mirrors, tools, wrenches and an oil filter; *fifth,* a large portable sectional dance floor, only in place when the auditorium was being used for dancing or other assemblies and immediately thereafter removed and stored.

As to the property described in the first classification I have made, it is unquestionably, under the rule in this state, a part of the realty, and passed with the transfer of the title to the freehold. The *status* of most of these articles has been passed upon by the supreme court of this state in *Temple Company* v. *Penn Mutual Life Insurance Co.,* 69 *N. J. Law* (40 *Vr.*) 36, and the evidence in this cause amply justifies the conclusion that they were permanently attached to the freehold, and are within the rule established in *Feder* v. *Van Winkle, 53 N. J. Eq.* (8 *Dick.*) 370.

The property embraced within the second classification has in a recent case been held to be personal property (*New York Life Insurance Co.* v. *Allison, 107 Fed. Rep. 179*), but the court, in delivering its judgment, expressly stated that the determination was controlled by the rule in New York state on the subject, and as he interpreted that rule many articles do not become fixtures in that state which under the rule in New Jersey are held to be a part of the realty, so that I do not consider myself justified in accepting that case as an authority to be applied here, and feel supported in this conclusion by the circumstance that in the case last referred to the court was undoubtedly con-

trolled by *McKeage* v. *Hanover Fire Insurance Co., 81 N. Y. 38,* in which latter case it was held that gas fixtures were not permanently annexed, because they were simply screwed on projections of the gas pipes from the walls, left for that purpose, and could be detached by unscrewing them, thus giving greater weight to the manner of attachment than to the intention of the owner in making the accession to the freehold.

All of the articles in the class we are now considering were attached to the freehold as firmly and as efficiently as many articles are where their being a part of the realty is not disputed. A modern bathtub is attached to the water-supply fixtures of the dwelling by the simple process of screwing on two couplings, and it may be readily detached in a few moments by unscrewing the couplings, yet it would not be seriously argued that a bathtub so attached was not a part of the realty. I am of the opinion that these articles were sufficiently attached to the freehold to answer one of the requirements necessary to constitute them a part of the realty. The property to which they were attached was a large building, intended to be used for stores, offices, a theatre and a banqueting hall; neither the stores, offices or theatre could be efficiently used for the purposes to which the building was appropriated without the use of the articles so attached, thus furnishing another requisite demanded of a fixture. The remaining question to be considered is, were they attached with the intention of making them a permanent accession to the freehold? In *Feder* v. *Van Winkle, supra,* it was said "the intention must exist to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and there must be the presence of such facts and circumstances as do not lead to, but repel the inference, that it is intended to be a temporary annexation." The facts in the present case, in my judgment, repel the inference that the annexation was to be temporary. The building to which the attachment was made was erected and completed for the purposes of renting the same in parcels to tenants, and for that purpose the modern system was adopted of lighting and heating the entire building from a central plant located on the premises, which

plant I have already determined in this case to be a fixture, and without the chandeliers and gas fixtures the lighting system could not be operated. There is not a single fact in this cause leading elsewhere than to the conclusion that these articles were attached for the permanent improvement of the freehold, and my conclusion is that they were annexed by the owner as a part of the means adopted by him to carry out the purposes for which the building was erected, "and with the intention of permanently increasing its value for the use to which it is devoted." *Knicker-bocker Trust Co.* v. *Penn Cordage Co., supra.*

The *status* of the articles embraced within the third class presents a more difficult problem. On the hearing it appeared that a portion of the stage fittings were attached to the building. These I hold to be fixtures. But used in connection with these fittings was certain stage scenery, none of which was physically attached to the building, and when not in use was kept in a storeroom in the theatre building especially provided for the purpose. This scenery consisted of numerous parts; some, being set up, represents a parlor, others a kitchen and others different scenes. So far as the evidence shows, this scenery, when set up, fitted into and was held in place by other parts of the stage fittings, which were a part of the realty. I am of the opinion, and shall so hold, that such part of this scenery as was manufactured and supplied for use in this theatre, to be used in connection with such part of the stage fittings and scenery as are attached to the building, and which has been used in connection therewith, is constructively a part thereof, and was intended to be, and is a permanent accession to the freehold. The stage fittings are fixtures of which such scenery is a part, temporarily disconnected and indispensable to the appropriate use of the fittings and building they are connected with and thus constructively annexed to the freehold, such as hop-poles, taken down and lying in a pile on the land (*Bishop* v. *Bishop, 11 N. Y. 123*); or loom-beams, although not fastened to a loom which is permanently attached to the realty. *Hopewell Mills* v. *Taunton Savings Bank, 6 L. R. A. 249.*

The fourth and fifth classes, as well as all that part of the

furniture used on the stage, and in no way annexed, either physically or constructively, are clearly not fixtures and no part of the realty. Certain of this property is admitted in the answer to be personal, to which no claim is made by the defendants, and as to which we are not called upon to express any determination. The complainant, however, insists that all of this property, even if attached to the realty, falls within the rule established in *Campbell* v. *Roddy, 44 N. J. Eq. (17 Stew.) 244,* because some of the bonds secured by its mortgage were taken in the place of bonds formerly held by persons who had accepted them under a previous mortgage in payment for chattels furnished, and other bonds were held by persons who had advanced money for them, the money so advanced being used to pay the debts of the Temple Company, some of which had been incurred in purchasing the property covered by the mortgage. It seems to me that the relation of the parties to the subject-matter is too remote to warrant the application of the principle invoked. It is not pretended that a distinct mortgage was given to each creditor for the articles he furnished; on the contrary, the original mortgage, since foreclosed, was given to a trustee to secure the payment of certain bonds or certificates of indebtedness, with authority to the officers of the mortgagor corporation to negotiate the same, "and with the proceeds thereof to pay the indebtedness of the association," and if it should be made to appear that some of the debts were paid by the acceptance of some of these bonds by the creditor, those bonds are secured, not only by the goods he furnished, but also by property, real and personal, supplied by others. He chose to waive any lien or right he had on or to the particular articles furnished by him and accepted additional security for his debt, in common with all others who purchased the bonds, and under the circumstances ought not to now claim or be allowed a preference over other bondholders, and remove his special property from the lien of the mortgage given to secure their bonds as well as his. It must also be remembered that this mortgage has been foreclosed and all rights under it extinguished by sale of the real, and, it is claimed, of the personal, property, which was purchased by the

present complainant and afterwards conveyed to the Temple Company, by which it was again mortgaged under a scheme of reorganization, which materially changed the original situation.

I cannot perceive how any equity possibly existing in the original vendor could be administered without injury to other innocent persons; still, if it could, it seems to me that any such equity was extinguished by the foreclosure of the first mortgage held by the Penn company, for in that proceeding all subsequent encumbrancers were made parties, and if the present complainant had any claim on behalf of the bondholders, such as is now set up, viz., that actual annexations to the freehold were subject to the lien of the certain vendors prior to the right of the first mortgagee, it was its duty to then make the claim, and not wait until after sale and purchase to seek an establishment of it. If such a right exists, it is enforceable against all bondholders, as well as against the purchaser, the present defendant, and if carried out would permit certain bondholders to withdraw the mortgage security to the injury of other holders of like securities.

I will advise a decree in accordance with my conclusions as above expressed.