## HUMBOLDT FIRE INS. CO. v. W. H. ASHLEY SILK CO.

(Circuit Court of Appeals, Third Circuit. February 8, 1911.)

### No. 1,365.

1. CHATTEL MORTGAGES (§ 43*) — CONSTRUCTION — INCLUSION OF PERSONAL PROPERTY.

The habendum clause in a mortgage is subordinate to, and controlled by, the premises, and only describes the tenure by which the property therein granted and conveyed is to be held; and if no personal property has been conveyed by the premises, the habendum clause will not suffice to supply the omission and render the instrument a chattel mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 83; Dec. Dig. § 43.*]

2. INSURANCE (§ 330*)—AVOIDANCE OF POLICY—INCUMBRANCE OF PROPERTY— "CHATTEL MORTGAGE."

A mortgage was given by a silk manufacturing company to secure an issue of bonds, by virtue of a resolution of its board of directors authorizing a mortgage upon "the mill property, * * * its boilers, engines, buildings, stacks, silk winding, spinning, reeling, and quilling machinery, dynamos and electric light plant." The mortgage described the real estate and property above enumerated, and also "fixtures, materials, and all other property on the said above-described premises situate, * * * to have and to hold all and singular the above-described real and personal properties," etc. The boilers, engines, and machinery described were a part of the silk manufacturing plant, and were all attached to the real estate by being set in concrete or brick, or by lag screws attaching them to the floor. The mortgage was not recorded as a chattel mortgage, as required by the law of New Jersey, where the property was situated. Held, that under the law of New Jersey it was not a "chattel mortgage," within the meaning of a provision of an insurance policy covering the machinery and personal property in the mill making it void in case the personal property insured should be incumbered by a chattel mortgage.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 829–839; Dec. Dig. § 330.*

For other definitions, see Words and Phrases, vol. 2, pp. 1098–1106.]

3. INSURANCE (§ 343*)—AVOIDANCE OF POLICY—"ASSIGNMENT OF POLICY" BY INSURED.

A provision in a mortgage given by a corporation to secure bonds requiring the mortgagor to keep the property insured for the benefit of the mortgagee, and that "this section shall be construed and taken to be an assignment of the said first party's interest in and to any and all insurance policies thereon for the use and benefit of the holders of said bonds in case of loss," is not an assignment of a policy of insurance on the property, in contravention of a provision therein that any assignment thereof before a loss shall work a forfeiture.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 883; Dec. Dig. § 343.*

For other definitions, see Words and Phrases, vol. 1, pp. 566–571; vol. 8, p. 7584.]

4. INSURANCE (§ 665*)—ACTION ON POLICY—EVIDENCE.

An insurance policy provided that the company should not be liable for a greater proportion of any loss than the amount insured thereby should bear to the whole insurance on the property, and also required that in case of loss the proof of loss should contain a sworn statement showing, among other things, all other insurance on the property. In an action on such policy, defendant produced, on demand of plaintiff, such proof of loss made by plaintiff, containing a schedule of all other insur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ance, which was admitted in evidence without objection. *Held*, that it was sufficient proof, prima facie, of the other insurance on the property.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 665.*]

5. INSURANCE (§ 92*)—ACTION ON POLICY—EVIDENCE.

Where, in an action on an insurance policy, the evidence showed that proof of loss was delivered to the agent who issued the policy, and was by him sent to and received by defendant, it was not incumbent on the plaintiff to prove that such agent was authorized to receive the proof on behalf of defendant.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 92.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action at law by the W. H. Ashley Silk Company against the Humboldt Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Arthur S. Arnold, for plaintiff in error.

W. B. Gourley, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. Suit was brought in the court below by the defendant in error, the W. H. Ashley Silk Company, a corporation of the state of New Jersey, against the Humboldt Fire Insurance Company, the plaintiff in error. The Insurance Company had insured the plaintiff below against loss by fire to the property mentioned in the policy. A fire occurred, resulting in a total loss, which the Insurance Company refused to pay. The Silk Company thereupon brought suit, which resulted in a verdict and judgment against the Insurance Company, for $2,750, and to reverse this judgment the present writ of error has been sued out by the defendant below.

The policy in question is of, what is called, the standard form, and, in consideration of the premium, insured the Silk Company against all direct loss or damage by fire, except as thereinafter provided, to an amount not exceeding $2,500, while located and contained as described therein, and not elsewhere, to wit:

"The W. H. Ashley Silk Co.
Hackettstown, N. J.

"$2500.   On machinery, fixed and movable machines, and extra parts of same. deckers. reel mills, power reels, winding and doubling machines. quilling machines and connections, shafting, belting, pulleys. hangers, gearing, spools, bobbins, steam, gas and water pipes and their fittings, office and factory furniture and fixtures, iron safes, cases, stationery and all tools, implements, utensils, apparatus and supplies, used in and appertaining to the business of silk manufacturing, and electric lighting plant.

"$ Nil   On their stock of silk, raw, wrought or in process of manufacture, their own or the property of others, held by them in trust or on commission, or sold but not removed, all, while contained in the two story frame tin roof building and additions thereto, with one and two story brick and frame boiler and engine rooms attached, situated on the south side of Franklin avenue, Hackettstown, N. J."

Among the numerous conditions upon which it is provided that this entire policy shall be void, is one providing that it shall be so "if the

subject of insurance be personal property, and be or become incumbered by a chattel mortgage."

The principal defense relied upon by the defendant, was an alleged violation of this condition, rendering void the policy in question; and its special plea and also its notice filed with the plea of general issue alleged that the personal property, which was the subject of insurance, was incumbered by a chattel mortgage at the time the said policy of insurance was executed. In support of this contention, the defendant on the trial produced in evidence a mortgage, dated the first day of April, 1902, made by the defendant company to Seymour R. Smith, trustee, to secure the holders of certain bonds of the said company. This mortgage was in existence, and the bonds it was intended to secure were outstanding, at the date of the execution of the policy. If, therefore, as alleged, it was a chattel mortgage, and as such incumbered the subject-matter of the insurance, the policy was rendered void by that fact, and the plaintiff below could not recover, and this, though the risk was in no wise affected thereby, to the prejudice of the defendant.

The mortgage in question on its face is in the general form of a real estate mortgage, made to a trustee for the purpose above mentioned. It recites the resolution of the board of directors, authorizing its making and describing the property to be covered thereby, which was adopted February 3, 1902, and approved by the stockholders of the company on February 10, 1902. This was notice to all who were or should become interested in the security furnished by this mortgage, of the specific grant of power under which it was framed and executed. It is, as said by the counsel for the appellee, a direct and vital authority contained in the instrument itself, as to the limit and extent of the powers to mortgage. The language of the resolution, after providing for the issue of certain bonds by the Silk Company, is as follows:

"Said bonds to be secured by a first mortgage deed of trust, dated April 1st, A. D. nineteen hundred and two, made by the said company of the first part to Seymour R. Smith, of the township of Byram, in the county of Sussex, and state of New Jersey, as trustee for the bondholders of the second part, which said mortgage shall be upon the mill property of said company at Hackettstown, aforesaid; its boilers, engines, buildings, stacks, shafting, silk winding, spinning, reeling and quilling machinery, dynamos and electric light plant."

In the granting part of the mortgage, the language is that usually employed in a deed or mortgage of real estate. It is as follows:

The party of the first part has "granted, bargained, sold, conveyed, released, assigned, transferred and set over, and by these presents in pursuance and execution of the power and authority in said company vested and in that behalf enabling, doth grant, bargain, sell, convey, release, confirm, assign, transfer and set over unto the said Seymour R. Smith, Trustee, his successor or assigns, all the following described tracts or parcels of land and premises, situate, lying and being in the town of Hackettstown in the county of Warren and state of New Jersey, to wit:

"The First Tract.—Begins at a post in the westerly edge of Franklin street corner to lands of John B. Mucklow and runs * * * (1) south fifty degrees west," etc.

\* \* \* \* \* \* \* \* \* \*

"The Second Tract.—Begins at a point in the westerly edge of Franklin street corner to lands of Alfred Peer and runs along the edge of said street (1) south," etc.

＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊

"Together with all and singular the buildings, improvements, boilers, engines, stacks, shafting, silk winding, spinning, reeling and quilling machinery, dynamos and electric light plant, fixtures, materials and all other property on the said above described premises situate, and being now held and owned by the party of the first part in connection therewith and together also with the rights, liberties, privileges, easements, hereditaments and appurtenances whatsoever unto the hereby granted premises belonging or in anywise appertaining, or to belong or appertain and the remainders and reversions, rents, issues and profits thereof, and also all the estate, right, title, interest, property, claim and demand of every nature and kind whatsoever, of the said party of the first part, at law or equity, of, in and to the same and every part and parcel thereof. To have and to hold all and singular the above described real and personal properties, rights and privileges, hereditaments and premises hereby granted or mentioned or intended to be with the appurtenances, unto the said Seymour R. Smith, his successors or assigns forever."

Thus framed and executed, this mortgage was recorded as a real estate mortgage, in conformity to the statutory requirements of the state of New Jersey in that behalf, and it was not recorded as a chattel mortgage. The statute of New Jersey concerning chattel mortgages provided, among other things, that:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made ＊ ＊ ＊ shall be absolutely void as against the creditors of the mortgagor, and as against the subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder or holders of said mortgage, his, her, or their agent or attorney stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon, be recorded ＊ ＊ ＊ in the clerk's office of the county wherein the mortgagor, if a resident of this state, shall reside at the time of the execution thereof,"

in separate books provided for that purpose. None of these requirements of the statute had been complied with. There was, moreover, no schedule or other description of personal property intended to be mortgaged contained in or annexed to the instrument in question; notwithstanding the evidence to which we have above alluded, that the intent of the parties was otherwise. These facts would seem to be of controlling significance as to the understanding of the parties in regard to the character of the mortgage in question.

Nevertheless, it is contended for the plaintiff in error that the boilers and other machinery enumerated in the resolution of the board of directors, and afterwards included in the appurtenance clause of the mortgage, were in whole or in large part personal property and not fixtures appurtenant to the real estate described in the mortgage. Of this, hereafter. Counsel for the appellant, however, lays great stress upon the fact that the enumeration of the boilers and other machinery in the appurtenance clause ends with the words "materials and all other property on the said above described premises," and contends that this language covers, and therefore the mortgage must be held to cover and include, all the personal property owned at the time of the making thereof by the Silk Company on its said premises, other

than that specifically enumerated in the said appurtenance clause, and claimed as fixtures, and that therefore the mortgage in question is ·a chattel mortgage, as well as a real estate mortgage. This being the only language from which it is argued that chattels were unequivocally embraced in the property conveyed by the mortgage deed, it deserves attentive consideration. It is to be observed that the words quoted follow the specific enumeration of certain improvements and machinery which, with the real estate, is to be covered by the mortgage, and are clearly subject to the rule of ejusdem generis, by which the generality and indefiniteness of their meaning is to be limited by the nature and character of the things which they immediately follow.

As will be shown hereafter, none of the things comprised in the preceding enumeration is, for the purposes of the mortgage, a chattel or personal property, all of them being fixtures and part of the real estate conveyed. The meagerness and generality of the description lacking entirely specification, enumeration or schedule, is inconsistent with the evident understanding of the parties, that the instrument in question was not a chattel mortgage, within the meaning of those words, as used in the contract between the parties, in the policy of insurance. Can it be seriously contended that the plaintiff below had forfeited all rights under its policy, by failing to disclose the mortgage in question as a chattel mortgage, within the meaning of those words in a policy? It is true, that a real estate mortgage may. also be·a chattel mortgage, where that is the intention of the parties, clearly expressed by the language used, where there is an unequivocal conveyance and transfer of the property in specified chattels readily ascertained by a general description. Here, there is no transfer of the property in chattels in general or in particular. The words "materials and other property" are merely included in the "together with" clause, describing the appurtenances to the real estate which has been granted and conveyed, and like the words "real and personal" in the habendum clause, appear to have dropped by their own weight from the point of a scrivener's pen. The word "property," moreover, does not.either specifically or generally refer to personal property or chattels, and its use alone in a real estate mortgage is clearly insufficient to make such a mortgage a chattel mortgage. The word "materials" is, of course, too equivocal and indefinite to connote by itself property of any sort. But it is contended that the habendum clause still more clearly establishes the character of the instrument as a chattel mortgage. As the habendum clause is subordinate to the premises, and only describes a tenure by which the property therein granted and conveyed is to be held, it follows that if no personal property has been conveyed by the premises, the habendum clause will not suffice to supply the omission. Moreover, it is well settled that if the habendum is inconsistent with the premises, the former must control the meaning of the instrument, and not the latter.

Being of opinion that, unless the boilers, engines, and other machinery authorized to be mortgaged, and included and described in the granting part. of the mortgage, are other than fixtures, and part of the real estate conveyed, the mortgage in question is not a chattel mortgage, within the meaning of the policy of insurance, it is neces-

sary to inquire how they are to be considered for the purposes of this case.

Referring to the enumeration and description of the property covered by the insurance policy, it appears that there was included both fixed and movable machines, and that the insurance covers both what are claimed as fixtures by the defendant in error and explicitly mentioned and described articles that must be designated as chattels or personal property. But the question here is, not how the policy has classified, if it has classified at all, the property covered by it—whether as fixtures or personal property—but, what was the character in this respect of the property covered by the mortgage and which became the "subject of insurance."

There are few topics of the law which have been so long and so frequently illustrated by the decisions of the courts in this country and in England, as that of fixtures. The lines of decision have been generally determined by the point of view and relation of the contesting parties, and on this account there is sometimes an apparent confusion in the decisions of the different state courts of this country. In the main, however, the general principles of the law in regard to fixtures is well settled and in harmony with the rules of property, as established by the decisions of the highest courts of the state of New Jersey.

In Feder v. Van Winkle, 53 N. J. Eq. 370, 33 Atl. 399, 51 Am. St. Rep. 628, the highest court of New Jersey says that, while chattels must, to constitute them fixtures, be actually annexed to the real estate or something appurtenant thereto, it is not necessary that they should be attached to the buildings; that it is not necessary that there be an intention to make the annexation perpetual. It is said that the intention must exist to incorporate the chattels 'with the real estate for the uses to which' the real estate is appropriated. In that case, various kinds of machinery were involved, some of it resting on large timbers laid in the earth, some placed on a foundation of concrete, some fastened by iron or wooden rods let down from the beams or rafters above, some fastened to the floor by lag screws, and some merely had power applied to them by a belt coming through a hole in the roof. It was said they were fitted for and applied to the use for which the real estate was appropriated. "Thus the machinery and land," said the court, "became unified and incorporated together as a whole."

In Erdman v. Moore & Co., 58 N. J. Law, 460, 33 Atl. 958, Chief Justice Beasley, speaking for the Supreme Court, said that the property there considered consisted of a portable furnace and a portable cooking stove or range, neither of which was bricked in or otherwise incorporated with the building, the furnace resting on a cemented floor with its pipes running into the chimney flues, and the cooking stove or range also having pipes running into the flue. He said:

"From this statement it is clear that neither of these appliances could be deemed fixtures simply by reason of their physical connection with the building. It must be conceded that such connection was of the slightest character. It would not have injured either them or the structure, in the slightest degree, to have removed them. Nevertheless, although accepting this as the necessary inference, in my opinion, this heater and range are, under the

proofs before the court, to be considered and treated as parts of the realty. The ground of this conclusion is that it was the intention of the owner of the building to make them such."

In Lee v. Hubschmidt Building & Woodworking Company, 55 N. J. Eq. 623, 37 Atl. 769, Vice Chancellor Pitney held that a boiler and engine, shafting leading therefrom, a tenoning machine, a molding machine, a planer, a cross-cut saw, a lathe, a joiner and a dado machine were all a part of the realty, because they were purchased by a corporation and adapted to the business which it was organized to carry on, namely, "a general building and woodworking business," and placed by it in its mill, and were all fastened to the building to a certain extent, and not moved about from place to place in actual use.

In Knickerbocker Trust Co. v. Penn Cordage Co., 66 N. J. Eq. 308, 58 Atl. 409, 105 Am. St. Rep. 640, it was held that where certain machines were a necessary part of the company's plant and were fastened to the floors of various buildings by lag screws, they were a part of the realty.

In Security Trust Company v. Temple Co., 67 N. J. Eq. 514, 58 Atl. 865, it was held that chandeliers used for lighting a building, though only screwed on, were sufficiently attached to the real estate to become a fixture and a part thereof, and that stage scenery used in connection with stage fittings were also a part of the realty, because they were adapted to and used for the business to which the building was itself appropriated.

The machinery authorized to be mortgaged in the present case, and which the plaintiff in error claims is personal property, were "its boilers, engines, shafting, silk winding, spinning, reeling and quilling machinery, dynamos and electric light plant." They were a part of a silk manufacturing plant, and the entire building in which they were located, or to which they were appurtenant, was devoted to the work of the Silk Manufacturing Company, and they were all attached to the real estate, either by being set in concrete or brick foundations, like the boilers, engines and stack, or by lag screws attaching them to the floor, as in the case of the silk winding, spinning, reeling and quilling machinery. We are of opinion, therefore, that the mortgage in question was not a chattel mortgage, within the meaning of those words as used in the policy, and that the defense in this regard is not consonant with a just administration of the law of the contract.

In regard to the condition of the policy, that any assignment thereof before a loss shall work a forfeiture, the court below was asked at the trial to instruct the jury that the policy was void, by virtue of the violation of this condition, the said violation consisting of the covenant in the mortgage by which it is agreed that the party of the first part will keep the building and machinery and fixtures insured for the benefit of the party of the second part, and "that this section shall be construed and taken to be an assignment of the said first party's interest in and to any and all insurance policies thereon for the use and benefit of the holders of said bonds in case of loss." We agree with the court below, that this is not an assignment of the policy in question,

in contravention of the stipulation referred to.    It is not an assignment of the policy in præsenti, but is an executory contract, as to the interest of the party of the first part, "to any and all insurance policies thereon for the use and benefit of the holders of said bonds in case of loss."    The plaintiff below has not been divested of its interest by this so-called assignment clause in its mortgage.    The stipulation therein was made as a collateral security to a mortgagee and creditor. The plaintiff still retained, not only a possible but a real interest in the contract of indemnity.    It was not an out and out assignment, such as we must hold was contemplated by the parties in an agreement which involved a forfeiture.    Such agreements are always strictly construed against the party in whose favor the forfeiture is claimed. Long v. Farmers' State Bank, 147 Fed. 360, 77 C. C. A. 538, 9 L. R. A. (N. S.) 585; True v. Manhattan Fire Ins. Co. (C. C.) 26 Fed. 83; Matthews v. Capital Fire Ins. Co., 115 Wis. 272, 91 N. W. 675.

It was also insisted at the argument that the plaintiff did not show what other insurance was held against the property, and the following provisions of the policy were referred to:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property," etc.

The failure of the plaintiff to affirmatively show what policies of insurance it held on the property covered by the policy in suit, as a basis for its recovery of damages, was urged by the defendant as one of the reasons supporting his motion for a new trial.    The court below, in its opinion refusing a new trial, said as to this point, that the burden of proof in this respect rested upon the defendant.    It appeared at the trial that the defendant, on the demand of the plaintiff, produced the proof of loss, made up on the form and in accordance with the requirements of the defendant company.    Said proof of loss, among other things, stated that the total insurance covering any of said property at the time of said fire was $60,500, and no more, as particularly specified in schedule "A" hereto annexed.    This proof of loss was made out and sworn to by the treasurer of the plaintiff, and filed in due time, and apparently conforms to the rules of the defendant company, as no objection was made thereto in that regard.    Schedule "A," referred to in this statement, is a particular account of all the policies taken out by the company upon the property covered by the policy in suit, as well as other property, stating the names of the companies issuing said policies and the several amounts thereof, respectively.    Whatever may have been otherwise the burden of proof on the plaintiff, we think that this sworn statement, produced at the trial by the plaintiff and admittedly received by the defendant as an accompaniment to the plaintiff's claim for the whole amount of insurance, made it incumbent upon the defendant to object, if objection it had, to this statement of other insurance, as a basis upon which recovery was to be had on the policy in suit.    This statement was admitted by the court, with the consent of counsel for the defendant, to

show compliance with the terms of the policy in that regard. Referring to the policy, we find a stipulation imposing upon the plaintiff, as the insured, the duty, if fire occurs, to give immediate notice of any loss thereby in writing to the defendant, and within sixty days after the fire to render a statement to the defendant, "signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property." The defendant, therefore, already and within the time specified in the policy, had full notice in the sworn statement of the plaintiff of all other insurance on said property, and at the trial this sworn statement was introduced by the plaintiff as part of his case, and is admitted by the court for the purpose already stated.

In view of what has been said, the objection now made by defendant, that it was only admitted to show compliance with the terms of the policy, and could not therefore serve as proof by the plaintiff of the other insurance held by it upon the property covered by the policy in suit, is too technical to commend itself to the court. No injury of any kind accrued to the defendant, by reason of the court's action in this regard, and to ask that this court should reverse the judgment of the court below and send this case back for a new trial, in order that the sworn list of other insurance in the defendant's hands and produced by plaintiff at the trial, be again sworn to by one of the officers of the plaintiff company, would serve no purpose of justice in this case. Appellate courts are not inclined to reverse the judgment of the court below upon technical objections, even if well founded, where, in their opinion, that judgment has accomplished substantial justice and the party asking for review has not been injuriously affected by the alleged error.

After what has been said, it is hardly worth while to dwell upon the objection that the agency of the person who received the proof of loss could not be properly proved by the agent's own oral testimony. It appears by the evidence that the proof of loss, filed with the witness, was immediately forwarded to the defendant company, and by the defendant company was produced at the trial. This dispenses with any necessity for proof of agency. Moreover, it appears that the person to whom the said proof of loss was delivered, was the one who issued the policy on behalf of the defendant company, and delivered the same to the plaintiff, signing his name thereto as the agent of the defendant. This would have been sufficient, if any proof was necessary to make him prima facie agent of the company for the purpose of receiving proof of loss.

The consideration of the case has been embarrassed by the needless multiplication of the assignments of error—65 in number. All that we think substantial in them has been covered by what has already been said in regard to what we consider the real questions involved, and as, in our opinion, no reversible error prejudicial to the defendant below has been assigned, the judgment should be affirmed.