MODERN SECURITY COMPANY, Plaintiff, *v.* EMELINE THWAITES and Others, Defendants.

City Court of New York, New York County, May 19, 1930.

*Miller & Miller* [*David M. Palley* and *Morton Miller* of counsel], for the plaintiff.

*Kreutzer & Slack* [*Arthur A. Beaudry* and *Meyer H. Slack* of counsel], for the defendants.

STEUER, J.   Plaintiff sold defendant Thwaites a complete hot water heating system, consisting of a boiler, mains and risers, and installed them in her house.   The sale was made under a conditional sale agreement duly recorded.   At the time the other two defendants were mortgagees of the house in question.   Defendant Thwaites defaulted upon the conditional sale agreement, and plaintiff started this action to replevy the plant.   Pursuant to the writ of replevin, plaintiff removed the plant from the premises, and this action is brought to establish plaintiff's right of possession.   She also defaulted upon her mortgage, and foreclosure proceedings were begun.   After the exercise of the writ the property was sold under foreclosure of the mortgage and a deficiency judgment was entered in excess of the value of the heating plant.   Defendants counterclaim for damages for the value of the plant.   Plaintiff proved that the boiler was manufactured in sections, and upon the occasion of its removal was taken apart in the sections and removed without injury either to itself or the premises.   The mains were installed by means of collars through which they were passed.   These collars were screwed to the ceiling of the cellar and were not removed. The risers mounted from the mains to the radiators on the various floors.   There were two risers for every radiator, one to bring up the hot water and the other to allow the cold water to descend. Holes were made in the floors to allow these risers to pass through. The first floor had about sixteen of these risers, and there was a decreasing number on the succeeding floors.   Plaintiff's testimony was that these risers were removed without damage to the premises, and that the only effects discoverable to the eye were the holes left in the floors.   Defendants' testimony was to the effect that the risers could not be removed without causing some plaster to fall, and that an inspection of the premises two weeks after the removal revealed large gaps in the ceilings around the holes.   This was counteracted by testimony that the ceilings were in bad condition and that there was an absence of plaster in other places.   It was stipulated that the value of the plant installed was $1,287.

The rights of the parties are largely governed by section 67 of the Personal Property Law (added by Laws of 1922, chap. 642). This section provides that, if goods sold pursuant to a conditional sales agreement are affixed to realty so as to become a part thereof, but cannot be severed without material injury to the freehold, the reservation of title is void against any party not expressly assenting thereto. This section is only intended to apply to such articles of personalty which ordinarily would become realty except that a different intent was indicated by the parties. (*Madfes* v. *Beverly Development Corporation*, 251 N. Y. 12, 16.) At common law, such articles, unless by annexation they entirely lose their character as personalty, which is when removal could not be accomplished without their destruction (See *Ford* v. *Cobb*, 20 N. Y. 344, 348), or where the articles are necessary to the support of the building to which they are attached (*Tifft* v. *Horton*, 53 N. Y. 377, 380), are, when sold under conditional sale, personalty. (*Tifft* v. *Horton*, *supra*.) The reason is that the intent of the parties to allow title to remain in the seller shows an intent to have the property remain personalty, which is only overcome by showing that from the use and purpose of the article that intent could not have been entertained by the parties. Such a superior showing is made by establishing that the articles fall within one of the above-mentioned classifications. The actual intent of the parties is submerged by the rules for discovering their intent, and the former becomes of such little importance that even the use of the word is misleading. The facts upon which decision is based are as to the article itself and not how the buyer and seller regarded it. The section above referred to does not change the law respecting attached chattels which cannot be severed without destruction or without impairing the support of the building. As to others (not inherently personalty), it makes the test of their nature depend upon whether they can be severed without material injury to the freehold.

The defendants rest their case of material injury on two grounds: (1) That plaster fell as a result of removal of the pipes; (2) that the removal left several holes in the floors and ceilings, these being the holes through which the risers mounted. As to the first claim, disregarding the dispute in the testimony on this point, the loosening and falling of plaster can hardly be deemed a *material* injury to the freehold. The breaking of a cement base to a fountain was not considered such an injury. (*Metropolitan Stone Works* v. *Probel Holding Corporation*, 131 Misc. 519.) A more difficult question is presented by the second contention. It is true that the holes in the ceilings and floors were not made by the severance or removal of the chattel. Yet a condition which undoubtedly constitutes material injury results from the removal. The question whether

the fact, as distinguished from the act of severance, may cause the material injury, has never been squarely decided. The wording of the section is passive and open to either construction. Turning to analogous situations, the most recent authority points to the construction that the fact of removal may create the injury. In *De Bevoise* v. *Maple Avenue Construction Co.* (228 N. Y. 496) some of the chattels were mantels and bookcases attached by a nail driven into a block of wood in the brick wall of the building, and could be detached by drawing the nails and without injury to the articles or the wall. The removal would expose the wall, leaving an unplastered space open to view. The court said, at page 504 of 228 New York: " The fact that the wall at a certain point was not completely plastered, while a circumstance to be considered, is not determinative of the question (*Mc Keage* v. *Hanover Fire Ins. Co.*, 81 N. Y. 38), especially in view of the intention of the vendor and vendee evidenced by the conditional bill of sale." The expression of the court that the fact that an unplastered part of the wall was exposed is a factor, though not a determinative one, upon the question of whether the removal constituted a material injury is revealing. The opinion indicates that the reason that this was a factor was because the articles may have been intended to correspond with and properly form a part of the inner surface of the walls. This question was left to be decided on a new trial. Here, most certainly, the pipes were intended to fill the holes made for them, and as such were intended to constitute a portion of the structure. Their removal is, therefore, a material injury to the premises. There remains to be considered only the right of the defendants to recover. The reservation of title is not good as against them. The installation of the plant subjected it to the lien of their mortgage. That lien has been violated.

Verdict directed for defendants on the counterclaim. Exception to the plaintiff. Submit judgment accordingly. Ten days' stay of execution; thirty days to make a case.